NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

IDEAL LAUNDRY CORPORATION, Respondent.

No. 331–69.

United States Court of Appeals, Tenth Circuit.

March 9, 1970.

---

Douglas L. Leslie, Attorney, N.L.R.B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and Paul J. Spielberg, Attorney, Washington, D. C., on the brief), for petitioner.

John K. Pickens, Alexandria, Va., for respondent.

Before LEWIS and SETH, Circuit Judges, and BRATTON, District Judge.

## PER CURIAM.

The National Labor Relations Board here seeks enforcement against respondent of its order to bargain. In earlier proceedings the order to bargain had been entered and had been ordered to be enforced by this court against Ideal Laundry and Dry Cleaning Company, the predecessor of the respondent. NLRB v. Ideal Laundry & Dry Cleaning Co., 372 F.2d 307 (10th Cir.). The Board had then found that the Union was the exclusive bargaining representative of the production and maintenance employees in the laundry and dry cleaning plant. The Board in the present action found that the respondent corporation was operating the plant as the successor to the original corporation and was bound by the order theretofore entered. The Board also found that the respondent had refused to bargain in violation of section 8(a) (5) (1) of the National Labor Relations Act.

Thus the only issue before us is whether the respondent was obligated to bargain with the union as a successor to the corporation against which the initial order was directed. The refusal to bargain is admitted by the respondent.

As to the details of the transfer of ownership, the respondent purchased from the old corporation its good will, name, the physical plant and real estate, and its accounts. The respondent also assumed the liabilities of the old corporation. The purchaser had knowledge of the then pending proceedings to enforce the Board's order. The new corporation continued to operate essentially the same business in the same plant at the same location. There were changes in the equipment, management, the layout of the plant, and the system employed in handling the work in the plant. Most of the customers remained with the new corporation and the delivery routes were about the same. The general laundry and dry cleaning services to the public were continued.

The old laundry and three other laundry and dry cleaning firms in Denver came under common ownership and there resulted some rearrangement of the equipment and employees among them. As to the old Ideal Laundry with which we are concerned, the record shows that about twenty-five per cent of the old equipment was moved out of the plant to other locations and some thirty to forty per cent new equipment was installed in the old plant. The layout of the plant was changed by rearranging the location of the machinery and the routing of the work through the plant.

A new electrical system was installed and the laundry marking and method of handling individual bundles were changed. There were substantial changes in the supervisory personnel, in the route personnel, and there were entirely new corporate officers. Since the initial election in 1961 there had been a substantial turnover of employees. Throughout the plant the employees have basically the same duties although performed in different locations in the plant in a slightly varied form by reason of the change in the routing and methods.

■ There is a wide difference in the significance attached to the changes by the parties in this action, but we are of the opinion that the findings of fact by the Board are supported by substantial evidence in the record. We further agree that the conclusion reached by the Board that the respondent was the successor of the original Ideal Laundry for these purposes was correct.

The most significant changes that took place, beyond the change in ownership, were the complete change in the officers of the corporation and substantial changes in the supervisory group. We have carefully considered this factor in reaching our conclusion. The respondent also argues that there has been a very significant change in the personnel since the initial union election in 1961. Respondent states that there were approximately 126 employees in the voting unit at that time, and only thirty-nine now remain on the payroll of the new corporation. There were some new employees transferred in from other laundries. However, we are not faced with an issue of the proper bargaining unit. This issue was decided in NLRB v. Groendyke Transport, Inc., 417 F.2d 33 (10th Cir.). We there said:

"In order to effectuate the policies of the Act, an employer may be ordered to bargain with a duly designated union without the necessity of a showing that the union has been able to maintain its majority status during the period of the employer's refusal to bargain."

The test to be applied to determine whether or not the successor corporation is bound by the orders issued against its predecessor were set out by this court in NLRB v. McFarland, 306 F.2d 219. We there said:

"If the transfer operated to effect a basic change in the employing industry, in the sense that the trucking operation of the predecessor became merged or integrated into the larger business of Respondent so as to lose its identity, then the bargaining unit is no longer appropriate and enforcement of the order should be denied."

In this cited case, the employer was a trucking company which had bought the physical assets and permits of its predecessor and continued to haul for a particular company. There was a change in location of the terminal and changes in the management. We there held, applying the standard quoted above, that the new corporation was bound as a successor. The same result must be reached on this appeal.

The parties have also discussed at some length the case of NLRB v. Alamo White Truck Service, Inc., 273 F.2d 238 (5th Cir.), and the court found there was not substantial evidence to support the Board's finding that the respondent was the successor of the previous corporation. The case concerned a sales and service branch of a national manufacturer of trucks with its headquarters in Cleveland. This San Antonio branch was closed and the physical assets were purchased by the former branch manager and the new corporation was commenced. No accounts, books, records, debts, or insurance were involved in the sale. The old space was rented for a short time and opened with a reduced force of mechanics and became primarily a repair organization. The court found that the important factor was the change in the management from headquarters in Cleveland to the local individuals who were active in the operation of the business, and the labor policy was

now decided by these individuals on the local basis.

 The respondent here urges also that the combination of the several laundries under the single management of which this is a part is still undergoing changes and its ultimate effect cannot yet be determined. However, we must examine the situation as it existed at the time of the transfer and consider the immediate changes that were brought about thereby. NLRB v. Auto Ventshade, Inc., 276 F.2d 303 (5th Cir.). If the standards are applied to the situation at that time, it leads to the conclusion that the respondent was the successor for these purposes to the initial corporation.

The order will be enforced, and the Board will submit a form of judgment.