**RANCH–WAY, INC., Petitioner,**

v.

**NATIONAL LABOR RELATIONS**
**BOARD, Respondent and Cross-**
**Petitioner.**

No. 368–70.

United States Court of Appeals,
Tenth Circuit.

June 24, 1971.

Rehearing Denied July 30, 1971.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 499.

Bruce W. Sattler, Denver, Colo., for petitioner.

Nancy M. Sherman, Washington, D. C. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and James P. Hendricks, Atty., N. L. R. B., on the brief), for respondent and cross-petitioner.

Before HILL and JONES*, Circuit Judges, and BROWN, District Judge.

JONES, Circuit Judge:

Colorado Milling and Elevator Company operated a number of mills and plants at different places for processing and selling grain and products made from grain. Among its operations was a feed mill at Fort Collins, Colorado. It decided to cease operating feed mills and employ the capital required for their operations in other phases of its business. Harold Johnson, the manager of its Fort Collins plant, learned of the intention to close that operation. Johnson undertook to find a purchaser for the mill. Ranch-Way, Inc., a conglomerate of sorts, negotiated for the plant and ultimately became the buyer of it. Johnson remained as its manager. Before the purchase was made, Ranch-Way learned that there was an overriding union contract between Colorado Milling and Elevator Company and American Federation of Grain Millers, International, AFL–CIO. There was an appendix to the contract which provided for the relations between the Union and the Company at the Fort Collins plant. Ranch-Way was told that the Union was inactive, that the members were not paying dues, and it had some report that the Union may have lost its majority of the employees.

When the sale to Ranch-Way had been made, Johnson was authorized to negotiate with employees separately with respect to wages, and these negotiations, in most instances, resulted in a lower wage scale than was provided by the contract between Ranch-Way's predecessor and the Union. Under Ranch-Way's operation all employees were to have a two weeks vacation rather than a measure of vacation periods by seniority as was provided by the contract. One of the contract holidays was eliminated. Other changes were put into effect with respect to working conditions.

Eighteen of the twenty-five employees covered by the Union contract were hired by Ranch-Way. The business conducted was substantially the same as it had been before the sale. Over seventy-five per cent of the former customers continued with Ranch-Way.

The Union advised Ranch-Way that it expected the Union contract to be respected and honored. Ranch-Way, through its counsel, replied that it was not bound by the contract and indicated a belief that the Union did not have a majority.

The Union brought an unfair labor practice charge. The Regional Director filed a complaint alleging that Ranch-Way had refused to bargain with the

---

* Of the Fifth Circuit, sitting by designation.

Union in violation of Section 8(a) (1) and (5) of the National Labor Relations Act. A hearing was held before an Examiner of the Board who decided that Ranch-Way was not bound by the contract between Colorado Milling and Elevator Company and the Union. His view was that because the contract covered many plants and over eight hundred employees it was inapplicable to the comparatively small single unit operation of Ranch-Way at Fort Collins. The Board rejected the views of its Examiner and held that Ranch-Way was the successor of Colorado Milling and Elevator Company and as such was bound by the contract with the Union. The Board ordered that Ranch-Way cease and desist from violations of the Act; that it honor, maintain and enforce the collective bargaining agreement and, upon request, bargain with the Union. The order directed that appropriate notices be posted. Ranch-Way has filed a petition asking that the Board's order be vacated. The Board has answered and seeks enforcement of its order.

No error appears in the Board's finding that there were no such differences between Colorado Milling and Elevator Company and Ranch-Way as would render the contract inoperative as to Ranch-Way. This is particularly true since an appendix to the primary contract covers the Fort Collins operation with respect to the matters where differences of one kind or another might call for separate treatment.

Implicit in the Board's finding is a determination that Ranch-Way did not entertain a good faith doubt as to the Union's majority. The evidence on the record as a whole sustains the Board's finding.

Where there has been a lock, stock and barrel sale of a going concern, resulting in a substantial continuity of identity, the purchaser is bound by the collective bargaining provisions of an agreement between its predecessor and a union. See National Labor Relations Board v. Ideal Laundry Corporation, 10th Cir. 1970, 422 F.2d 801; National Labor Relations Board v. McFarland, 10th Cir. 1962, 306 F.2d 219.

There is no error in the Board's conclusion that Ranch-Way is a successor to the company from which it acquired the Fort Collins business. It is bound by the collective bargaining provisions of the Union contract. The order of the Board will be

Enforced.