871 So.2d 270 (2004)
FLORIDA PUBLIC EMPLOYEES COUNCIL 79, AFSCME, AFLCIO, Appellant,
v.
PUBLIC EMPLOYEES RELATIONS COMMISSION and Florida Board of Governors, Appellees.
No. 1D03-1190.
District Court of Appeal of Florida, First District.
March 22, 2004.
Rehearing Denied May 4, 2004.
*271 Alma Gonzalez, Special Counsel for the Florida Public Employees Council 79, AFSCME, Tallahassee; Jerry G. Traynham, Esq. and Ben R. Patterson, Esq. of Patterson & Traynham, Tallahassee, for Appellant.
Michael Mattimore, Esq. and Robert E. Larkin, III, Esq. of Allen, Norton & Blue, P.A., Tallahassee for Florida Board of Governors; David Smolker, Esq. of Bricklemyer, Smolker & Bolves, P.A., Tampa for New College of Florida Board of Trustees, for Appellee.
LEWIS, J.
Appellant, the Florida Public Employees Council 79, AFSCME, AFL-CIO, seeks review of an order of appellee, the Public Employees Relations Commission ("PERC"), dismissing appellant's petitions to amend certification. Appellant contends that PERC erred in designating the university Boards of Trustees as the public employers of their respective universities. For the following reasons, we affirm.
During a special session in 2002, the Florida Legislature passed chapter 02-387, Laws of Florida, "the Governance Act," wherein it abolished the Florida Board of Regents, effective July 1, 2001,[1] and established new criteria for local Boards of Trustees at each state university,[2] effective *272 January 7, 2003. Ch. 02-387, §§ 3, 83, at 3152, 3236, Laws of Fla. The Legislature amended section 447.203(2), Florida Statutes (2001), which set forth that "the Board of Regents shall be deemed to be the public employer with respect to all public employees within the State University System ..." by replacing the "Board of Regents" with the "university board of trustees" and prescribing that the individual boards would "be the public employer with respect to all public employees of the respective state university...." Ch. 02-387, § 1006, at 4129, Laws of Fla. Thus, section 447.203(2), Florida Statutes (2002), provides, in pertinent part, that:
With respect to all public employees determined by the commission as properly belonging to a statewide bargaining unit composed of State Career Service System employees or Selected Professional Service System employees or Selected Professional Service employees, the Governor shall be deemed to be the public employer; and the university board of trustees shall be deemed to be the public employer with respect to all public employees of the respective state university.

(emphasis added).[3]
Thereafter, the voters of Florida approved the following constitutional amendment to Article IX of the Florida Constitution in November 2002, which became effective on January 7, 2003:
SECTION 7. State University System.
(a) PURPOSES. In order to achieve excellence through teaching students, advancing research and providing public service for the benefit of Florida's citizens, their communities and economies, the people hereby establish a system of governance for the state university system of Florida.
(b) STATE UNIVERSITY SYSTEM. There shall be a single state university system comprised of all public universities. A board of trustees shall administer each public university and a board of governors shall govern the state university system.
(c) LOCAL BOARDS OF TRUSTEES. Each local constituent university shall be administered by a board of trustees consisting of thirteen members dedicated to the purposes of the state university system. The board of governors shall establish the powers and duties of the boards of trustees. Each board of trustees shall consist of six citizen members appointed by the governor and five citizen members appointed by the board of governors. The appointed members shall be confirmed by the senate and serve staggered terms of five years as provided by law. The chair of the faculty senate, or the equivalent, and the president of the student body of the university shall also be members.[4]
(d) STATEWIDE BOARD OF GOVERNORS. The board of governors *273 shall be a body corporate consisting of seventeen members. The board shall operate, regulate, control, and be fully responsible for the management of the whole university system. These responsibilities shall include, but not be limited to, defining the distinctive mission of each constituent university and its articulation with free public schools and community colleges, ensuring the wellplanned coordination and operation of the system, and avoiding wasteful duplication of facilities or programs. The board's management shall be subject to the powers of the legislature to appropriate for the expenditure of funds, and the board shall account for such expenditures as provided by law. The governor shall appoint to the board fourteen citizens dedicated to the purposes of the state university system. The appointed members shall be confirmed by the senate and serve staggered terms of seven years as provided by law. The commissioner of education, the chair or the advisory council of faculty senates, or the equivalent, and the president of the Florida student association, or the equivalent, shall also be members of the board.
On January 7, 2003, appellee, the Board of Governors, the members of which were appointed by the Governor on December 23, 2002, unanimously met and approved a resolution "delineating the powers and duties of the university Boards of Trustees" pursuant to the powers bestowed upon it by the voters of Florida. The resolution, in pertinent part, provides that "[e]ach board of trustees is vested with the authority to govern its university, as necessary to provide proper governance and improvement of the university in accordance with law and with rules of the Board of Governors." The resolution further provides that:
Each board of trustees shall establish the personnel program for all employees of the university, including the president, pursuant to the provisions of chapter 1012 and, in accordance with rules and guidelines of the Board of Governors, including: compensation and other conditions of employment, recruitment and selection, nonreappointment, standards for performance and conduct, evaluation, benefits and hours of work, leave policies, recognition and awards, inventions and works, travel, learning opportunities, exchange programs, academic freedom and responsibility, promotion, assignment, demotion, transfer, tenure and permanent status, ethical obligations and conflicts of interest, restrictive covenants, disciplinary actions, complaints, appeals and grievance procedures, and separation and termination from employment.... No rule of the Board of Governors shall be considered to in any way contravene the responsibility of each of the university board of trustees to act as the sole public employer with regard to all public employees of its universities for the purposes of collective bargaining in accord with chapter 447 Florida Statutes.

BE IT RESOLVED that it is the intent of the Board of Governors that the university boards of trustees shall be the sole public employer with respect to all public employees of the respective state universities as provided in s. 447.203(2) and (10) F.S. for the purpose of collective bargaining....
(emphasis added).
That same day, appellant filed a Petition to Amend Certification with PERC, requesting that PERC amend "Certifications numbered 730, 731, 732, and 733" to reflect that the Board of Governors, pursuant to article IX, section 7, was the successor employer of all employees whose previous *274 employer was the Board of Education. Appellant subsequently filed an Amended Petition to Amend Certification, which, for the most part, mirrored its initial petition. PERC appointed a hearing officer, who directed the Board of Governors to respond. In his recommended order, the hearing officer found that appellant sought to substitute the Board of Governors for the Board of Education as the public employer for the purpose of collective bargaining and to challenge the Board of Governors' resolution on constitutional grounds. According to the hearing officer, the issue did not raise disputed issues of material fact; however, the pleadings raised disputed issues of law.[5]
In his legal analysis, the hearing officer concluded that, until section 447.203(2), which provides that the Boards of Trustees are to serve as the public employers of their respective universities, was repealed by the Legislature or judicially determined to be invalid or unconstitutional, PERC was bound by it. Based upon this statute, the hearing officer concluded that the Boards of Trustees are the public employers of their individual universities for the purpose of chapter 447. While noting that appellant's constitutional challenge to the Board of Governors' resolution was preserved, the hearing officer noted that he would not address the challenges because PERC only had the jurisdiction, authority, and responsibility to decide the merits of the amendment to certification process. However, "assuming the constitutionality of the resolution," and in reading the "explicit language" of article IX, section 7 to mean that the Board of Governors has a broad range of discretion in establishing the powers and duties of the Boards of Trustees, the hearing officer concluded that the Board of Governors was not the public employer because the resolution granted that authority to the Boards of Trustees.
Following the filing of appellant's exceptions to the recommended order, PERC issued its Order Dismissing Petitions. Therein, PERC found appellant's exception that section 447.203(2) was not controlling meritless and determined that the statute clearly and unambiguously set forth that the Boards of Trustees were deemed the public employers. PERC further determined that the statute was not qualified in any manner that would suggest that it pertained only to boards created by legislative fiat and not by constitutional amendment. PERC concluded that, until and unless section 447.203(2) was repealed or invalidated, it was bound to recognize the Boards of Trustees as the public employers, without distinction as to when or how those boards were created. In declining to address the constitutionality of the Board of Governors' resolution, PERC determined that the resolution was superfluous based upon section 447.203(2) and that any defect in the resolution would have no effect on the Boards of Trustees' public employer status. This appeal followed.
In denying appellant's petitions, PERC relied solely upon section 447.203(2) and its provision that the Boards of Trustees are to serve as the public employers of their respective universities. However, as of the effective date of article IX, section 7, which was January 7, 2003, the Board of Governors was the entity that *275 was "fully responsible for the management of the whole university system." See Art. IX, § 7(d), Fla. Const. As of that day, the Board of Governors was also the entity responsible for establishing the "powers and duties of the boards of trustees."See Art. IX, § 7(c), Fla. Const. In establishing the powers and duties of the Boards of Trustees, the Board of Governors, in accordance with the powers vested in it by the voters of Florida, designated the Boards of Trustees as the public employers of their respective universities. Because the Board of Governors has addressed this issue, notwithstanding the fact that it reached the same conclusion as the Legislature did, the Legislature's pronouncement that the Boards of Trustees are to serve as the public employers of their respective universities is no longer enforceable. As such, section 447.203(2) cannot serve as the basis for PERC's denial of appellant's petitions.
On appeal, the Board of Governors contends that, regardless of PERC's reliance on section 447.203(2) in denying appellant's petitions, it reached the correct result because the Board of Governors' action of designating the Boards of Trustees as the public employers of their respective universities constituted a legitimate exercise of constitutional authority. We agree and conclude that, pursuant to article IX, section 7(c), the Board of Governors may constitutionally grant the authority to act as the public employers of the state universities to the respective Boards of Trustees. Because the Board of Governors, pursuant to the powers bestowed upon it by the voters of Florida, designated the Boards of Trustees as the public employers of their respective universities, we affirm PERC's order. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any basis which would support the judgment in the record.").
AFFIRMED.
HAWKES, J., CONCURS; WEBSTER, J., CONCURS IN PART AND DISSENTS IN PART WITH WRITTEN OPINION.
WEBSTER, J., concurring in part and dissenting in part.
As the majority correctly notes, the dismissal of appellant's petitions to amend certifications pursuant to which appellant represented four statewide bargaining units of state university employees was based entirely on PERC's conclusion that language in section 447.203(2), Florida Statutes (2002), specifying that "the university board of trustees shall be deemed to be the public employer with respect to all public employees of the respective state university [sic]" controlled and that, accordingly, amendment of the certifications was not appropriate because "[t]he amendment procedure is not intended for use when a change in the bargaining unit will not allow substantial continuity in representation"; rather, "[s]uch a change requires that representation be established through a vote of the bargaining unit members." Although I disagree somewhat with the analysis by which it arrived at its decision, I agree with the majority that PERC's initial conclusion regarding the portion of section 447.203(2) upon which it relied was erroneous. It seems to me that, upon its effective date (January 7, 2003), the amendment to our constitution which became article IX, section 7, vested in the newly created Board of Governors of the State University System complete authority to "establish the powers and duties of the boards of trustees" called for by section 7(c). At that point, the portion of section 447.203(2) relied upon by PERC *276 (by which the legislature bestowed upon university boards of trustees the power to engage in collective bargaining with employees) became irreconcilable with, and was superceded by, the new constitutional provision.
I agree also with the majority's resolution of appellant's argument that the Board of Governors could not, consistent with article IX, section 7, delegate to the various university boards of trustees complete power to engage in collective bargaining. I perceive nothing ambiguous or otherwise unclear in the pertinent language of that section. It provides, in the broadest terms, that "[t]he [B]oard [of Governors] shall operate, regulate, control, and be fully responsible for the management of the whole university system." Art. IX, § 7(d), Fla. Const. It then provides that "[t]he [B]oard of [G]overnors shall establish the powers and duties of the boards of trustees." Id. § 7(c). There is certainly nothing in the section to suggest that the Board of Governors may not delegate to the boards of trustees such of its powers and duties as it may deem appropriate. In the absence of any ambiguity, we are obliged to give effect to the language of the constitution, as written. See, e.g., Fla. Soc'y of Ophthalmology v. Fla. Optometric Ass'n, 489 So.2d 1118, 1119 (Fla.1986) ("Any inquiry into the proper interpretation of a constitutional provision must begin with an examination of that provision's explicit language. If that language is clear, unambiguous, and addresses the matter in issue, it must be enforced as written"). Accordingly, I agree that the Board of Governors could (as it did) delegate to the various boards of trustees the power to engage in collective bargaining with public employees of their respective universities.
Where I find myself obliged to part company with the majority, however, is with regard to its ultimate decision to affirm PERC's order. I would, instead, reverse and remand for further proceedings.
Section 447.203(2) defines a "public employer" in general as "the state or any county, municipality, or special district or any subdivision or agency thereof which the commission [i.e., PERC] determines has sufficient legal distinctiveness properly to carry out the functions of a public employer." It is clear that because PERC concluded that the legislature had designated the university boards of trustees as the "public employers" for purposes of chapter 447, including collective bargaining, it did not find it necessary to determine whether the boards of trustees (as they exist today) satisfy the general definition of a "public employer." Because we have now concluded that PERC was not entitled to rely upon the legislature's designation of the boards of trustees as "public employers," it seems to me that the appropriate action is for us to reverse PERC's decision, and to remand with directions that PERC determine whether the boards of trustees satisfy the general definition of a "public employer."
It is apparent from the language defining a "public employer" generally that the legislature intended that whether a public entity satisfies the definition is a factual question to be resolved by PERC. Prior decisions by PERC clearly demonstrate that it has recognized as much. See, e.g., Communication Workers of Am. v. Gainesville Hous. Auth., 14 F.P.E.R. ¶ 19046, at p. 114 (1988) (stating that, in determining whether an entity qualifies as a public employer for purposes of section 447.203(2), PERC considers the "powers" the entity possesses, "includ[ing] the authority to raise revenue by issuing bonds, to acquire property through exercise of the power of eminent domain, the ability to purchase and sell property, enter into contracts, *277 borrow money, issue subpoenas, and to sue and be sued"); Hillsborough County Police Benevolent Ass'n v. Hillsborough County Bd. of Criminal Justice/Hillsborough County Sheriff's Dep't, 8 F.P.E.R. ¶ 13051, at p. 94 (1981) (examining the powers of the Hillsborough County Board of Criminal Justice, and concluding they were sufficient to satisfy the requirements of section 447.203(2) for a "public employer"). Our role as an appellate court does not include resolving for the first time factual issues not resolved by the lower tribunal. See generally Hillsborough County Sch. Bd. v. Williams, 565 So.2d 852, 854 (Fla. 1st DCA 1990) (factual issues may not be resolved for the first time on appeal). Rather, our role is limited to reviewing factual determinations actually made by the lower tribunal to determine whether those determinations are supported by competent, substantial evidence. See City of St. Augustine v. Prof'l Fire Fighters, 440 So.2d 416, 417-18 (Fla. 5th DCA 1983) (whether employees qualify as "managerial employees" for purposes of section 447.203(4) is a factual issue to be determined by PERC, and a reviewing court's role "is limited to a determination of whether there is competent, substantial evidence to support the determination"); City of Winter Park v. Fla. Pub. Employees Relations Comm'n, 349 So.2d 224, 225 (Fla. 4th DCA 1977) (same).
Here, PERC made no factual determination regarding whether the boards of trustees satisfy the general definition of a "public employer" set out in section 447.203(2). It seems to me that such a determination is required because, should PERC find that the boards of trustees do not satisfy the definition then, by default, the only other possible "public employer" regarding "public employees" of state universities would be the Board of Governors. If the Board of Governors is the "public employer," appellant's petitions to amend the certifications would appear, at least arguably, to have merit.
In light of the foregoing analysis, I am unable to comprehend the basis for the majority's decision to affirm PERC's dismissal of the petitions (as "right for the wrong reasons") unless it is based upon some unexpressed resolution of the factual issue regarding whether the boards of trustees satisfy the general definition of a "public employer." Because we may not resolve factual issues for the first time on appeal, I would reverse and remand with directions that PERC make that factual determination. Accordingly, I dissent from the majority's decision to affirm.
NOTES
[1] This provision replaced former section 229.008, Florida Statutes, which was part of the Education Reorganization Act. See Ch. 01-170, § 3, at 1368, Laws of Fla. (abolishing the Board of Regents as of July 1, 2001).
[2] The Legislature had previously created local Boards of Trustees, directing the Governor to appoint a thirteen-member board for each university no later than November 1, 2001. See Ch. 01-170, § 13, at 1391, Laws of Fla.; see also § 229.008(1)(a), Fla. Stat. (2001). After the Board of Regents was abolished, the Florida Board of Education became the public employer for purposes of collective bargaining. See § 229.003(5)(b), Fla. Stat. (2002) (providing that all the powers, duties, and functions of the Board of Regents were transferred to the Florida Board of Education).
[3] This section was not amended during the 2003 legislative session.
[4] Pursuant to sections 1001.71(1) and (4), Florida Statutes (2002), the Boards of Trustees were to be comprised of twelve members appointed by the Governor and confirmed by the state senate with the members to serve staggered four-year terms. The student body president of each university was to serve ex officio as a voting member of his or her university's board. § 1001.71(1), Fla. Stat. (2002). Members could be removed by the Governor upon a recommendation of the State Board of Education. § 1001.71(3), Fla. Stat. (2002). Notably, in 2003, the Legislature amended section 1001.71(1) to correspond with article IX, section 7 with respect to the composition of the Boards of Trustees.
[5] The hearing officer noted that, if the local Boards of Trustees were deemed the public employers of their respective universities, then appellant's petitions should be dismissed because the procedure to amend a certification was not designed to reconfigure existing bargaining units or to create new bargaining units but to provide parties to an existing certification the flexibility to change identities.