898 So.2d 96 (2005)
UNITED FACULTY OF FLORIDA, and Florida Public Employees Council 79, American Federation of State, County and Municipal Employees, AFL-CIO, Appellants,
v.
PUBLIC EMPLOYEES RELATIONS COMMISSION, Florida State University Board of Trustees and University of West Florida Board of Trustees, Appellees.
No. 1D03-4689.
District Court of Appeal of Florida, First District.
February 14, 2005.
*98 Thomas W. Brooks, Esquire of Meyer and Brooks, P.A., Tallahassee, for Appellant United Faculty of Florida. Jerry G. Traynham, Esquire and Alma Gonzalez-Neimeiser, Esquire of Patterson & Traynham, Tallahassee, for Appellant Florida Public Employees Council 79, AFSCME.
John G. Showalter, Esquire and Stephen A. Meck, Esquire, Tallahassee, for Appellee Public Employees Relations Commission. Michael Mattimore, Esquire and Brian Koji, Esquire of Allen, Norton & Blue, P.A., Tallahassee, for Appellee Florida State University Board of Trustees and the University of West Florida Board of Trustees.
Richard P. Siwica, Esquire and Tobe Lev, Esquire of Egan, Lev & Siwica, P.A., Orlando, for amicus curiae, Florida AFL-CIO.
BENTON, J.
We have for review a final order of the Public Employees Relations Commission (PERC) dismissing  over a vigorous dissent  unfair labor practice charges, filed by Florida Public Employees Council 79, American Federation of State, County and Municipal Employees, AFL-CIO (AFSCME) and the United Faculty of Florida (UFF), against the Florida State University Board of Trustees (FSUBOT), the University of West Florida Board of Trustees (UWFBOT), and the Board of Governors of the State University System (BOGSUS). We reverse PERC's final order, and remand for further proceedings.
In the order under review, the Commission majority state that "the change in employer from the [Board of Education] to the boards of trustees resulted from an amendment to Section 447.203(2), Florida Statutes." See ch. 2002-387, §§ 1006, 1065, at 4129-30, 4153, Laws of Fla. (effective January 7, 2003). In any event, on January 7, 2003, article IX, section 7 of the Florida Constitution took effect, creating BOGSUS to govern the statewide university system and providing that each "local constituent university shall be administered by a board of trustees." Art. IX, § 7(c), Fla. Const. Also on January 7, 2003, both FSUBOT and UWFBOT gave notice that payroll deductions for union dues would cease for their employees, including faculty.
In response, AFSCME and UFF, the unions whose dues were involved, filed unfair labor practice charges against FSUBOT and BOGSUS (Case Nos. CA-2003-008 and CA-2003-011) under section 447.501(1)(a) and (e), Florida Statutes (2003). Thereafter, AFSCME also filed such charges against UWFBOT and BOGSUS (Case No. CA-2003-025). Both FSU cases were consolidated before a single PERC hearing officer, and the UWF case proceeded separately before another PERC hearing officer, each hearing officer entering a recommended order. The Commission consolidated all three cases before handing down the single order[1] *99 under review. See Fla. Pub. Employees Council 79, Am. Fed'n of State, County, & Mun. Employees, AFL-CIO v. FSU Bd. of Trs., 29 F.P.E.R. ¶ 281 (2003).
In the final order, the PERC majority rejected the proposition that FSUBOT and UWFBOT were successors to the Board of Education (or to the antecedent Board of Regents[2]), noting that "only a fraction of the BOE's employees, supervisors, and facilities went to FSU and UWF." The PERC majority took the position that "it would be illogical to conclude that there is continuity between the BOE and the university boards of trustees," and dismissed the unfair labor practice charges on that basis. The dissent argued that FSUBOT and UWFBOT "are successor employers, [who] have an obligation to maintain the status quo as determined by their contracts," that the unfair labor practice charges should be sustained, and that all relief the charging parties sought should be granted.
We decide that FSUBOT and UWFBOT are successors to the former Board of Education as employers of members of AFSCME and UFF at Florida State University (FSU) and University of West Florida (UWF) respectively, and that FSUBOT and UWFBOT were bound by the collective bargaining agreements they inherited from the former Board of Education, pending amendment of AFSCME's and UFF's certifications, or the outcome of new representation elections. State government cannot, consistently with article I, section 6 of the Florida Constitution ("The right of employees... to bargain collectively shall not be ... abridged."), unilaterally terminate its obligations under a collective bargaining agreement simply by reorganizing the Executive Branch, where the employees affected perform the same work, in the same jobs, under the same supervisors, by operating the same facilities, carrying on the same enterprise, providing the same service.
The parties take no exception to the hearing officers' findings of fact which, in the FSU cases, include the following:
6. Effective January 7, 2003, the public employer of the public employees employed at FSU changed from the Board of Education to the FSU Board of Trustees. In re FPEC Council 79, AFSCME, 29 FPER 75 (2003), appeal filed, Case No. 1D03-1190 (Fla. 1st DCA Mar. 21, 2003). Subsequent to January 7, 2003, neither UFF nor AFSCME has secured or obtained a new certification from the Commission for a unit of employees employed by the FSU Board of Trustees. [[3]]
7. After the change in employers, the FSU Board of Trustees continues to operate a public institution of higher education with the same mission as before the change.
8. After the change in employers, a majority, if not all, of the employees in the statewide certified bargaining units who were employed at FSU continue to be so employed in the same jobs, in the *100 same locations, under the same or substantially the same immediate supervision, and under the same or substantially the same working conditions as before the change. The statewide university bargaining units represented by AFSCME and UFF were comprised of all included positions and classifications at the eleven state universities and colleges. The FSU Board of Trustees did not employ a majority of the employees included in the former statewide units after January 7, 2003.
9. At no time did the FSU Board of Trustees contemplate not employing a majority, if not all, of the employees in the certified bargaining unit who were employed at FSU prior to the change in employers.
10. Both prior to and after the change in employers, UFF and AFSCME each requested that the FSU Board of Trustees and the Board of Governors recognize and bargain with it as the exclusive bargaining agent for its employees who were included in the statewide bargaining units, but they refused to do so.
11. UFF filed a representation-certification petition seeking to be certified as the exclusive bargaining agent for the employees at FSU who were included in the statewide unit. (Case No. RC-2002-072)[.] UFF and the FSU Board of Trustees reached a consent election agreement on May 2, 2003, and an election is pending.
FSU Bd. of Trs., 29 F.P.E.R. ¶ 281, at 725. Since the hearing, the parties advise, elections have been held, AFSCME and UFF won, and are now certified.[4]
On judicial review of PERC orders, the view of the PERC majority is, we have often said, presumptively the product of special expertise to which courts should defer. Initially, therefore, the determination in the present case that the boards of trustees are not successor employers is a conclusion or
interpretation of chapter 447 [that] is entitled to great deference. See Public Employees Relations Commission v. Dade County Police Benevolent Association, 467 So.2d 987, 989 (Fla.1985); State, Department of Administration v. Public Employees Relations Commission, 443 So.2d 258 (Fla. 1st DCA 1983); Board of Regents v. Public Employees Relations Commission, 368 So.2d 641 (Fla. 1st DCA), cert. denied, 379 So.2d 202 (Fla.1979). "[A] reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence." PERC v. Dade County PBA, 467 So.2d at 989.
Dep't of Agric. & Consumer Servs. v. Edwards, 654 So.2d 628, 631 (Fla. 1st DCA 1995). On the other hand, as we have also and more recently said:
An agency's construction of a statute is not entitled to deference where the agency has erroneously interpreted a provision of law. See Pensacola Jr. College v. Public Employees Rels. Comm'n, 400 So.2d 59 (Fla. 1st DCA 1981); Southeast Volusia Hosp. Dist. v. National Union of Hosp. & Health Care Employees, 429 So.2d 1232 (Fla. 5th DCA 1983), appeal dismissed, 452 So.2d 568 (Fla.1984).
*101 City of Safety Harbor v. Communications Workers of Am., 715 So.2d 265, 266 (Fla. 1st DCA 1998). PERC must itself comply with statutes it administers that are intended to implement state constitutional provisions forbidding the abridgment of public employees' collective bargaining rights. See Art. I, § 6, Fla. Const.
State public employees relations law is construed with the National Labor Relations Act as a model "insofar as such construction is harmonious with the spirit and policy of Florida legislation on the subject." Pasco County Sch. Bd. v. Fla. Pub. Employees Relations Comm'n, 353 So.2d 108, 116 (Fla. 1st DCA 1977). In the private sector, a new employer assuming all or part of a predecessor's operations is required to bargain with the union selected by the predecessor's employees if it "makes a conscious decision to maintain generally the same business and to hire a majority of its employees from the predecessor." Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 41, 107 S.Ct. 2225, 96 L.Ed.2d 22 (1987) (interpreting N.L.R.B. v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272, 92 S.Ct. 1571, 32 L.Ed.2d 61 (1972)). To promote "industrial peace," continuity in the employing enterprise is determined from the viewpoint of the affected employees, because if
the employees find themselves in essentially the same jobs after the employer transition and if their legitimate expectations in continued representation by their union are thwarted, their dissatisfaction may lead to labor unrest.
Id. at 43-44, 107 S.Ct. 2225. If the bargaining unit remains appropriate and there is substantial continuity in the employing enterprise, a presumption arises that a majority of the new employer's workforce still desires union representation, and the successor employer has an obligation to bargain with the union they chose while working for its predecessor. Id. at 39-40, 107 S.Ct. 2225. Where it is perfectly clear from the outset that most of the new employer's employees will come from its predecessor's workforce, the successor employer must bargain with the union those employees selected while they worked for the predecessor employer, before altering the terms and conditions of employment with the successor. See Burns, 406 U.S. at 294-95, 92 S.Ct. 1571; N.L.R.B. v. Advanced Stretchforming Int'l, Inc., 233 F.3d 1176, 1180 (9th Cir.2000).
Even a small fragment of an enterprise, the result of "the piecemeal sale of business assets," Zim's Foodliner, Inc. v. N.L.R.B., 495 F.2d 1131, 1133 (7th Cir.1974) (holding that the owner of a single store purchased from the Kroger chain was a successor employer), is properly viewed as a successor employer. See also Saks & Co. v. N.L.R.B, 634 F.2d 681, 685 (2d Cir.1980) (holding that "diminution in unit size is insufficient to rebut the presumption of continued majority status"); Nazareth Reg'l High Sch. v. N.L.R.B., 549 F.2d 873, 879 (2d Cir.1977); N.L.R.B. v. Band-Age, Inc., 534 F.2d 1, 6 (1st Cir.1976) (holding that the diminution in an organization's size, and in the range of its products, does not preclude a finding of successorship).
Some twenty years ago, PERC decided how to determine who is a successor employer and what obligations a successor employer has under chapter 447, Part II of the Florida Statutes, in Int'l Bhd. of Elec. Workers, Local 323 v. Lake Worth Utils. Auth. & City of Lake Worth, 11 F.P.E.R. ¶ 16024 (1984), a decision PERC has never repudiated. PERC specifically held in the Lake Worth case "PERA is in large measure patterned after the NLRA. Therefore, in construing the provisions of PERA, the Commission, particularly in cases of first impression, will generally *102 seek guidance from federal precedent interpreting similar provisions of the NLRA." Lake Worth, 11 F.P.E.R. ¶ 16024, at 86.
Again citing its Lake Worth decision with approval in the final order in the present case, PERC's majority opinion begins its analysis of PERC precedent with this discussion:
One of the fundamental purposes of the Commission and Chapter 447, Part II, is to promote labor stability and harmony. See Section 447.201, Florida Statutes. When a new employer is determined to be a successor to the predecessor employer, labor stability and harmony are preserved by requiring the successor to bargain with the employees' chosen collective bargaining representative. See International Brotherhood of Electrical Workers, Local 323 v. Lake Worth Utilities Authority and City of Lake Worth, 11 FPER 16024 (1984) (Lake Worth).
In Lake Worth the Commission considered how to determine whether an entity is a successor employer, and looked to private sector precedent for guidance on how to resolve the issue. See NLRB v. Burns International Security Services, Inc., 406 U.S. 272 [92 S.Ct. 1571, 32 L.Ed.2d 61] (1972). The Commission noted that in construing provisions of Chapter 447, Part II, it will, particularly in cases of first impression, seek guidance from federal precedent interpreting similar provisions of the National Labor Relations Act (NLRA). However, to the extent that Chapter 447, Part II, and the NLRA follow divergent courses, the Commission will not follow federal decisions construing the NLRA. Lake Worth, 11 FPER at 86.
In Lake Worth, the Commission noted that a successorship inquiry focuses upon the continuity of the enterprise after the change in ownership. Although the determination is based on the totality of the circumstances and is highly fact specific, certain factors are usually considered indicative of successorship. For example, retention of the predecessor's employees in the same jobs, operation of the same facilities, use of the same supervisors, and manufacture of the same type of product. Lake Worth, 11 FPER at 85.
FSU Bd. of Trs., 29 F.P.E.R. ¶ 281, at 720. PERC had concluded in Lake Worth that laying down a rule that a mere change in a public "employer operated to deprive employees of their chosen" bargaining representative would disserve labor stability and harmony. Lake Worth, 11 F.P.E.R. ¶ 16024, at 86. PERC concluded that "[t]o the extent that the private sector doctrine of successorship imposes... an obligation [to bargain with the collective bargaining representative that ... new employees had chosen while working for their former employer] on successor employers ... it is `harmonious with the spirit and policy of Florida legislation on the subject' and therefore should be followed by the Commission." Id. (citations omitted). Until the present case, PERC consistently adhered to these views, notably reiterating them in Jacksonville Employees Together v. Jacksonville Elec. Auth., 25 F.P.E.R. ¶ 30180, at 374 (1999):
In In re City of Lake Worth, 11 FPER ¶ 16024 (1984), the Commission relied upon Board precedent in deciding whether a successor employer must recognize and bargain with a union certified to represent employees of its predecessor. The Burns doctrine has also been adopted in other states. NLRB v. Burns International Security Services, Inc., 406 U.S. 272 [92 S.Ct. 1571, 32 L.Ed.2d 61] (1972); see also California School Employees Association Chapter *103 435 v. Navada County Superintendent of Schools v. Navada Joint Union High School District, 3 PERC ¶ 10074 at 241 (Hearing Officer's Order 1997) aff'd, 3 PERC ¶ 10088 (Cal.PERC, 1979)[;] In re Employees of the Board of Governors of the State System of Higher Education, 15 PPER ¶ 15029 at 69-70 (Pennsylvania Labor Relations Board Hearing Examiner's Decision 1984). A central question of successorship is whether the change in ownership of the entity affects the nature of the enterprise as measured by retention of the predecessor's employees in the same jobs, operation of the same facilities, use of the same supervisors, and manufacture of the same type of product. See In re City of Lake Worth, 11 FPER ¶ 16024 at 85 citing Board precedent.
Essentially, if there is no change in the basic operations, then the successor employer must bargain with the prior union, even if the "unit" shrinks. NLRB v. Band[-]Age Inc., 534 F.2d 1 (1st Cir.1976), cert. denied, 429 U.S. 921 [97 S.Ct. 318, 50 L.Ed.2d 288] (1976). Consequently, an employer's reduction in size does not vitiate a presumption of majority support for an incumbent union. See NLRB v. Middleboro Fire Apparatus, 590 F.2d 4, 8 (1st Cir.1978), approved Fall River Dyeing and Finishing Corp. v. NLRB, 482 U.S. 27, 46 n. 11 [107 S.Ct. 2225, 96 L.Ed.2d 22] (1987). The presumption applies, as here, to spin-offs, when only a section of a company is taken over by a successor[.] See Ranch-Way, Inc. v. NLRB, 445 F.2d 625 (10th Cir.1971).
In this case, the relevant portion of the City's operation was wholly taken over by the JEA. All the employees continued to do the same work at the same location under basically the same supervision. There was no change in the nature of the enterprise. Under such circumstances, the presumption of continued majority support for AFSCME established by Board case law is applicable....
The Jacksonville Electric Authority succeeded to only a portion of the city's operations, just as FSUBOT and UWFBOT have taken over only their respective "local constituent universities," portions rather than the whole of the entire statewide system.
UFF relies heavily on PERC's recent decision in the certification amendment case involving graduate students employed by the University of South Florida (USF).
As in the case of when the BOE became a successor to the BOR, the inquiry now is upon whether the USF is a successor employer to the BOE. The Commission's test for successorship is as follows:
A successorship inquiry focuses upon the continuity of the enterprise after the change of ownership. Although the determination is based upon the totality of the circumstances, and by nature, is highly fact specific, certain characteristics are usually considered indicative of successorship. These include retention of the predecessor's employees in the same jobs, operation of the same facilities, use of the same supervisors, and manufacture of the same type of product.

Id. at 606, citing International Brotherhood of Electrical Workers, Local 323 v. Lake Worth Utilities Authority and the City of Lake Worth, 11 FPER ¶ 16024 at 85 (1984) (hereinafter referred to as the Lake Worth Utilities Authority test); see also Lake County Board of County Commissioners, 18 FPER ¶ 23286 at 529 citing Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27 [107 S.Ct. 2225, 96 L.Ed.2d 22] (1987) (where *104 there is substantial continuity between the two enterprises, the second employer is a successor to the first employer with a duty to bargain with the union representing the first employer's employees).
As indicated by the decision substituting the BOE for the BOR "the essential inquiry is whether the operations, as they impinge on union members remain essentially the same after the transfer of ownership." In re Joint Petition of Florida Board of Education and United Faculty of Florida to Amend Certification 502, 27 FPER ¶ 32279 at 606. Here, taken as a totality, the UFF has demonstrated that the requirements of successorship under the Lake Worth Utilities test have been met. Accordingly, I conclude that the USF is a successor to the BOE.
In re Petition of United Faculty of Fla. to Amend Certification No. 502, 29 F.P.E.R. ¶ 180, at 469 (2003) (recommended order adopted by Commission).
None of PERC's prior decisions support its decision in the present case. See id.; Jacksonville Employees Together, 25 F.P.E.R. ¶ 30180, at 374 (holding that the "central question of successorship is whether the change in ownership of the entity affects the nature of the enterprise as measured by retention of the predecessor's employees in the same jobs, operation of the same facilities, use of the same supervisors, and manufacture of the same type of product"); see also Teamsters, Chauffeurs, Warehousemen, & Helpers, Local 385 v. Lake County Sheriff's Office, 20 F.P.E.R. ¶ 25270, at 454-55 (1994) (finding that successorship doctrine applied where a single purpose employer, the Sheriff, assumed the operations of a correctional facility from a multipurpose employer, the County); In re Vero Beach Fire Fighters Ass'n, Local 2201, 12 F.P.E.R. ¶ 17172, at 399 (1986) (finding that a Fire District was the successor employer of the City); Lake Worth, 11 F.P.E.R. ¶ 16024, at 85. Under PERC's prior cases, while a successor employer's duty to bargain with a public employee union does not arise before certification, a successor employer may choose to bargain with the union before certification, and the status quo, as delineated in the collective bargaining agreement, remains in force pending a representation election or disposition of a petition to amend certification. See, e.g., Lake Worth, 11 F.P.E.R. ¶ 16024, at 86-89.
At FSU and UWF, no less than at USF, new employers continued to employ a majority, if not all, of the employees the former Board of Education employed at each institution, doing the same work in the same jobs, at the same locations, under the same immediate supervision, and under essentially the same working conditions as before the change. FSU and UWF are, therefore, as PERC itself has held regarding USF, "successor employer[s] to the BOE." In re Petition of United Faculty of Fla. to Amend Certification No. 502, 29 F.P.E.R. ¶ 180, at 470 (2003).
PERC's ruling that FSUBOT and UWFBOT were not successor employers to the Board of Education, because each new board of trustees assumed only a portion of the Board's operations, was error. The order under review articulates no persuasive reason for PERC's departure from its long-standing interpretation of the statutes it administers, or for its abrupt repudiation of private sector precedent in the area. A rule allowing state government to alter terms and conditions of employment unilaterally based solely upon reshuffling in the higher reaches of the bureaucracy  reshuffling that does not alter the work that state employees, whose wages and hours might be affected, must do in the *105 same way at the same place under the same supervisors to the same end  is unlikely to serve the stated legislative purpose "to promote harmonious and cooperative relationships between government and its employees." § 447.201, Fla. Stat. (2003).
The order under review is reversed and the matter is remanded to the Public Employees Relations Commission for further proceedings consistent with this opinion.
ALLEN and DAVIS, JJ., Concur.
NOTES
[1] By separate order, PERC dismissed BOGSUS as a party on July 9, 2003. BOGSUS's dismissal is not at issue on this appeal.
[2] For a discussion of the recent, tortuous history of public university governance in Florida, see Fla. Pub. Employees Council 79, AFSCME, AFL-CIO v. Pub. Employees Relations Comm'n, 871 So.2d 270, 271-74 (Fla. 1st DCA 2004).
[3] UFF attempted to amend its certification in anticipation of the January 7, 2003 changes. On August 27, 2002, UFF requested that FSUBOT recognize it, and on December 20, 2002, it filed a petition with PERC to be certified as the representative for its members who would be employed by FSUBOT. PERC ruled these attempts premature. FSU Bd. of Trs., 29 F.P.E.R. ¶ 281. After January 7, 2003, both UFF and AFSCME filed representation certification petitions.
[4] This does not moot the case, because an "unfair labor practice occurs at the moment a practice prohibited by Section 447.051 occurs. While subsequent actions may affect the remedy they cannot expunge the unfair labor practice." Ass'n of Bay County Educators, FTP-NEA v. Bay County Sch. Bd., 5 F.P.E.R. ¶ 10314, at 332c (1979) aff'd, 382 So.2d 747, 749 (Fla. 1st DCA 1980).