WETHERELL, J.,
specially concurring.
I agree with the analysis in Part I of the majority opinion and the disposition in Part IV of the opinion, but I do not join the remainder of the opinion for the reasons stated in Judge Osterhaus’ opinion with which I fully concur. I write separately to elaborate on why the constitutional issue injected into this ease by the original panel, embraced by the dissent, and rejected on the merits by the majority is not implicated in this case.
*979 The dissent asserts that “universities” have the power pursuant to article IX, section 7 of the Florida Constitution to adopt policies and regulations that trump conflicting state laws. The majority rejects this argument and holds that article IX, section 7 does not give the universities such power, at least in the context of firearm regulation. The problem with the dissent’s argument (and the majority’s decision to address the argument in this case) is that it glosses over the governance hierarchy of the state university system and ascribes the constitutional authority of the Board of Governors (BOG) to an individual state university without any indication that the BOG delegated its purported law-trumping power to the university.
The BOG is a constitutionally-created executive branch agency and is responsible for managing “the whole university system.” Art. IX, § 7(d), Fla. Const.; see also § 1001.705(2), Fla. Stat.[4] Each of the twelve individual state universities is “administered” by a board of trustees (BOT) that is responsible for providing policy-direction, oversight, and strategic planning for the university. See Art. IX, § 7(c), Fla. Const.; BOG Reg. 1.001. The BOG and the BOTs are not responsible for the day-to-day operation of the individual universities; that is the responsibility of the university’s administration under the direction and control of the university president.
Article IX, section 7 does not grant any constitutional authority to the individual universities. Section 7(d) vests the BOG with the authority to “operate, regulate, control, and [manage]” the university system, and section 7(c) authorizes the BOG to “establish the powers and duties” of the BOTs. The BOG, by regulation, has delegated various powers and duties to the BOTs, but the regulation did not delegate any authority directly to the individual universities. See BOG Reg. 1.001(1) (“The intent of this regulation is to delegate powers and duties to the university boards of trustees so that the university boards have all of the powers and duties necessary and appropriate for the direction, operation, management, and accountability of each state university.”) (emphasis added); see also State University System Governance Agreement,[5] at (3)(c) (Mar. 24, 2010) (affirming “the exclusive authority of the BOG for delegating powers and duties to the boards of trustees of the universities”) (emphasis added) (hereafter “Governance Agreement”).
The BOG unquestionably has broad constitutional authority, but it is debatable whether that authority includes the law-trumping powers suggested by the dissent.[6] And, even if the BOG has the pow *980 er to adopt regulations that supersede state law, nothing in BOG Regulation 1.001 authorizes the BOTs to exercise that power. Indeed, paragraphs (8)(e)[7] and (8)(f)[8] of the regulation require the BOTs to act in conformance with the law. See also Florida Board of Governors, Regulation Development Procedures for State University Boards of Trustees,[9] at § B.l. (July 21, 2005) (“Regulations must be consistent with law ....”). Moreover, even if the BOTs had been delegated the law-trumping authority suggested by the dissent, that has no bearing on this case because the challenged policy was adopted by the university administration, not the university’s board of trustees (hereafter “UNF BOT”),[10] and there is no indication that the UNF BOT delegated any of its purported BOG-delegated law-trumping powers to the administration.[11]
Furthermore, even if we were to assume (1) that the BOG has the constitutional authority to adopt regulations that supersede state laws and (2) that it delegated that authority to the UNF BOT and (3) that the UNF BOT further delegated that authority to the university administration, there is no indication in the record that the *981 administration exercised that authority here. First, as thoroughly discussed in Judge Osterhaus’ opinion, the policy at issue in this case was adopted pursuant to authority the administration mistakenly thought it had under section 790.115(2)(a)3., Florida Statutes. Second, the university policy governing the adoption of policies expressly states that policies should not “conflict with provisions contained in laws” and that conflicting laws “shall take precedence over the policy.” See UNF Policy 1.0010P, at § 2.
It is true, as the majority and the dissent note, that none of these points were argued in the trial court. But that does not matter. This analysis is not presented as an independent basis for reversal; it is simply presented to highlight what I consider to be the main flaw in the “tipsy coachman” basis for affirmance asserted by the dissent. I am not aware of any principle of appellate practice or procedure that would preclude consideration of this analysis (or that in Judge Osterhaus’ opinion) for purposes of evaluating the viability of the “tipsy coachman” argument asserted by the dissent.
Furthermore, principles of judicial restraint counsel against addressing issues— particularly constitutional issues — which are not squarely presented by the facts or which are not necessary to resolve the ease before the court. Here, resolution of the constitutional issue injected by the original panel has no bearing on the outcome of this case because, as discussed above, the policy at issue in this case was not adopted by the BOG or pursuant to a clear delegation of the BOG’s purported power to adopt law-trumping regulations. Accordingly, there was no need for the court to even address the constitutional issue in this case and the majority opinion should have simply left resolution of the issue to another day.

. This statute was enacted in an effort to harmonize and delineate the respective "constitutional duties” of the Legislature and the BOG pertaining to the state university system. See ch. 2005-285, Laws of Fla. Among the constitutional duties of the BOG recognized in this statute is the "responsibility for ... [c]omplying with, and enforcing for institutions under the [BOG]'s jurisdiction, all applicable local, state, and federal laws." § 1001.705(2X0, Fla. Stat.

. This agreement was entered into by the BOG, the Florida Senate, the Florida House of Representatives, and the Governor in the circuit court case that culminated in Graham v. Haridopolos, 108 So.3d 597 (Fla.2013). The agreement is available online at http:// www.acad.usf.edu/News/Budget/docs/ 2010-03-24-SUS-Governance-Agreement.pdf.

. The majority and the dissent each make persuasive arguments on this constitutional issue, but as Judge Osterhaus’ opinion correctly recognizes, it is simply not necessary to reach or resolve the issue in this case. If and when the BOG adopts a regulation such as the policy at issue in this case that conflicts with state law, the merits of the constitutional issue discussed by the majority and the dissent will be ripe for resolution. Cf. Fla. Pub. Empls. Council 79, AFSCME, AFL-CIO v. Pub. *980 Empls. Rels. Comm’n, 871 So.2d 270, 275 (Fla. 1st DCA 2004) (concluding that statute designating the "university board of trustees” as the public employer for university employees was "no longer enforceable” after the effective date of article IX, section 7, but affirming lower tribunal’s decision because the BOG had adopted a resolution consistent with the statute designating each BOT as the public employer for its employees). NAACP and Decker do not resolve this issue as the dissent contends. Those cases did not address the scope or extent of the regulatory authority granted by article IX, section 7, nor did they discuss section 1001.705, Florida Statutes. Rather, those cases simply stand for the unremarkable proposition that actions taken by the BOG (NAACP) or a university (Decker) pursuant to authority derived from the constitution are not subject to the Administrative Procedure Act. Cf. § 120.52(1), Fla. Stat. (defining "agency” to exclude governmental entities acting pursuant to powers derived from the constitution); see also Governance Agreement, supra, at (5)(b) (requiring the BOG to comply with the Administrative Procedure Act when adopting rules to implement legislatively delegated authority "for subjects outside the scope of the BOG’s constitutional authority”); § 1001.706(2)(b), Fla. Stat. (same).

. "Each board of trustees is responsible for compliance with all applicable laws, rules, regulations, and requirements." BOG Reg. 1.001(8)(e) (emphasis added).

. "Each board of trustees shall perform such other duties as provided by the Board of Governors, or as each board of trustees may determine are necessary or appropriate for the administration of the university so long as the trustees comply with any applicable laws and Board of Governors’ regulations and policies.” BOG Reg. 1.001(8)(f) (emphasis added).

. Available at http://www.unf.edu/uploaded Files/presidenl/trustees/Regulation DevelopmentProcedureforStateUniversity Boards% 20of% 20Trustees.pdf (hereafter "BOT Regulation Development Procedure”).

. This point is significant because the procedure by which the university administration adopts policies differs markedly from the procedure by which the UNF BOT adopts regulations. Compare Univ. of North Fla. Policy 1.0010P ("Policy Creation and Development Process”) with BOT Regulation Development Procedure, supra; see also Procedures and Policies for Promulgating Policies and Regulations (Univ. of North Fla. Aug. 2006) (available at https://www.unf.edu/presidem/ policies_reguIations/InternaLProcedures_for_ Promulgating_Polices_and_Regulations.aspx).

. No such delegation of authority appears in the UNF BOT's bylaws (available at http:// www.unf.edu/trustees/Bylaws.aspx), the resolution on presidential authority adopted by the UNF BOT (available at http://www.unf. edu/president/ Resolution_on_Presiden-tiaLAuthority.aspx), or the university’s constitution (available at https://www.unf.edu/ president/UNF_Constitution.aspx).